IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| RICHARD WAYNE ROGERS ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 17-1570-MN-SRF |
| v. ) | |
| ) | |
| AIR & LIQUID SYSTEMS ) | |
| CORPORATION et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by defendant Nosroc Corp. ("Nosroc").[1] (D.I. 99) Plaintiff, Richard Wayne Rogers ("Mr. Rogers"), did not respond to this motion. For the following reasons, I recommend GRANTING defendant's motion for summary judgment.[2]

### II. BACKGROUND

#### a. Procedural History

On September 18, 2017, plaintiff Richard Wayne Rogers ("Mr. Rogers") originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Rogers' alleged harmful exposure to asbestos. (D.I. 1, Ex. A)

---

[1] Nosroc is the successor-in-interest to G. & W.H. Corson, who allegedly sold products manufactured by Baldwin-Ehret-Hill ("BEH") and Keene. (D.I. 100 at 1-2) Reference to "Nosroc's products" is meant to include any alleged asbestos-containing products manufactured by BEH and Keene.

[2] Nosroc's opening brief in support of its motion for summary judgment is found at D.I. 100.

On November 2, 2017, the case was removed to this court by defendant Foster Wheeler LLC ("Foster Wheeler") pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[3] and 1446. Nosroc filed its motion for summary judgment on October 10, 2018. (D.I. 99) Plaintiff did not respond to this motion.

### b. Facts

#### i. Mr. Rogers' alleged exposure history

Plaintiff alleges that he developed mesothelioma as a result of exposure to asbestos-containing materials during his career at the DuPont Seaford plant ("DuPont") and his service as a machinist mate in the United States Navy. (D.I. 44 at ¶¶ 4-10) Plaintiff contends that he was injured due to exposure to asbestos-containing products that defendants mixed, mined, manufactured, distributed, and sold. (*Id.* at ¶ 11) Accordingly, plaintiff asserts claims for negligence, punitive damages, strict liability, and conspiracy. (*Id.* at ¶¶ 15-47)

Mr. Rogers was deposed on April 11 and 24, 2018. (D.I. 48; D.I. 49) Plaintiff did not produce any other fact or product identification witnesses for deposition.

Mr. Rogers started working in housekeeping at DuPont in July 1966, following his high school graduation. (D.I. 100, Ex. A at 28:4-16, 64:2-22; Ex. B at 17:4-15) He worked at DuPont for three months. (D.I. 100, Ex. A at 28:8-11, 64:19-22) While working in housekeeping, Mr. Rogers swept the warehouse floor in the staple area. (*Id.* at 64:15-18, 66:9-17; Ex. B at 16:16-19) He used a sweeping compound while sweeping. (D.I. 100, Ex. B at 17:21-23) The sweeping compound was stored in containers throughout the plant. (*Id.* at 17:24-18:5)

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

2

In September 1966, Mr. Rogers started boot camp in the Great Lakes. (*Id.* at 21:6-20) He was in boot camp for three months and was then assigned to the *USS Moale*, a DD-693 World War II Fletcher-class destroyer, in Newport, Rhode Island. (*Id.* at 21:13-23:3; D.I. 44 at ¶ 10) He entered as a fireman and became a machinist mate on the *USS Moale*. (D.I. 100, Ex. B at 21:21-25, 23:12-19) As a machinist mate, he worked in engine rooms performing maintenance on pumps, condensers, and evaporators. (*Id.* at 23:16-19, 24:6-17) Mr. Rogers described how every pipe or steam line is wrapped with asbestos. (*Id.* at 25:1-5) He described how he wet a material, made a paste, and packed the paste around the steam line. (*Id.* at 25:7-15)

In 1967, Mr. Rogers was then stationed at the *USS Cony*, a DD-508 Fletcher-class destroyer, in Philadelphia.[4] (D.I. 44 at ¶ 10) He performed pump maintenance on the *USS Cony* for a few months before being transferred to the *USS Steinaker*, a DD-863 Fletcher-class destroyer in Norfolk, Virginia. (D.I. 100, Ex. B at 30:8-10, 30:22-31:16, 33:13-24; D.I. 44 at ¶ 10) Mr. Rogers performed pump maintenance on the *USS Steinaker*. (D.I. 100, Ex. B at 34:4-35:22) He continued to serve on the *USS Steinaker* until his honorable discharge from the Navy in 1970. (*Id.* at 39:10-22; Ex. A at 67:10-14)

In December 1970, Mr. Rogers returned to DuPont, and performed the same housekeeping duties that he had undertaken prior to his naval service. (D.I. 100, Ex. B at 42:5-25) Later, he worked on bale scales at DuPont, shipping and labelling bales of nylon. (*Id.* at 43:1-11) Thereafter, he worked on draw machines and boxed nylon. (*Id.* at 43:25-44:13) He left DuPont in 1973 to work in general construction with his father. (*Id.* at 47:14-25; D.I. 44 at ¶ 10) Mr. Rogers assumed control of the construction business from his father in 1976 and

---

[4] In his deposition, Mr. Rogers stated that he was on the *USS Moale* until 1970, though the amended complaint notes that he was stationed on the *USS Moale* until 1967. (D.I. 100, Ex. B at 29:18-30:5; D.I. 44 at ¶ 10)

3

renamed it "Richard Wayne Rogers Builder." (D.I. 100, Ex. B at 49:5-50:8) He associates the three-tab shingles he used in this construction work with asbestos, but could not remember the name of any shingle manufacturers. (*Id.* at 50:14-51:9, 52:8-21; Ex. A at 61:8-21, 62:15-22) Mr. Rogers remains president of his construction company. (D.I. 100, Ex. B at 57:9-13) Mr. Rogers was diagnosed with mesothelioma in April 2017. (*Id.* at 8:21-23)

### ii. Plaintiff's product identification evidence

Plaintiff is the sole product identification witness in this case and his deposition occurred on April 11 and 24, 2018. (D.I. 48; D.I. 49)

#### 1. Nosroc

Mr. Rogers did not identify any asbestos-containing Nosroc products or exposure to any Nosroc products. Plaintiff has not come forward with any evidence in the record to refute Nosroc's representation that nothing exists in the record concerning an exposure to Nosroc's products.

## III. LEGAL STANDARD

### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R.

Civ. P. 56(e)(2)–(3). A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 80) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[5] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) *abrogated on other grounds by Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986 (2019)[6] (citing *Stark v. Armstrong World Indus., Inc.*,

---

[5] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[6] In *Devries*, the Supreme Court rejected "the more defendant-friendly bare metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Devries*, 139 S. Ct. at 994. The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to

21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[7] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

---

believe that the product's users will realize that danger." *Id.* at 996.

[7] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

### c. Delaware Law

The parties do not dispute that Delaware law applies to all land-based claims. (D.I. 80) Under Delaware law, a plaintiff asserting a claim for asbestos-related injuries must introduce evidence showing a product nexus between his exposure to a defendant's product and his asbestos-related injuries. *Cain v. Green Tweed & Co.*, 832 A.2d 737, 741 (Del. 2003) (citing *In re Asbestos Litig.*, 509 A.2d 1116, 1117 (Del. Super. Ct. 1986), *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987)).

Delaware courts have not followed the "frequency, proximity, and regularity" test,[8] first set forth in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), which has been adopted as the test in numerous jurisdictions. *Happel v. Anchor Packing Co.*, 2010 WL 7699063, at *1 (E.D. Pa. Oct. 14, 2010). Delaware courts require a plaintiff show that he was in proximity to the product at the time it was being used. *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super Ct. 1986). Plaintiff must show "that the asbestos product was used in an area where the plaintiff frequented, walked by, or worked adjacent to, with the result that fibers emanating from the use of the product would have been present in the area where the plaintiff worked." *Cain*, 832 A.2d at 741. This standard "requires plaintiff [to] show 'some evidence' of both 'daily and continuous proximity' to defendant's product for more than a *de minimis* period of time." *In re: Asbestos Litig.*, 2017 WL 237617, at *2 (Del. Super. Ct. Jan. 17, 2017) ("*Hastings*").

This standard, known as the "product nexus standard," is meant to ensure that the plaintiff presents "a factual connection in space and time between a particular plaintiff and a

---

[8] The court, in *Lohrmann*, stated that to support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. *Lohrmann*, 782 F.2d at 1162-63.

particular defendant's product." *Id.* (quoting *Merganthaler*, 1988 WL 116405, at *1-2) "Delaware courts have held that a plaintiff can survive summary judgment if there is non-speculative testimony that asbestos-containing products were used at a worksite during the time plaintiff was employed there." *Happel*, 2010 WL 7699063, at *1. "'To defeat summary judgment in a case where the plaintiff himself is not able to establish exposure, a co-worker must be able to place the plaintiff in the vicinity of a specific location on the defendant's property, at a specific time, where friable asbestos is present.'" *In re Asbestos Litig.*, 2017 WL 510463, at *1 n.3 (D. Del. Feb. 6, 2017) ("*Reed*") (quoting *In re Asbestos Litig.*, 2007 WL 1651968, at *20 (Del. Super. Ct. May 31, 2007), *as corrected* (June 25, 2007) ("*Helm*")).

## IV. DISCUSSION

### a. Nosroc

The court recommends granting Nosroc's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether Mr. Rogers was exposed to an asbestos-containing Nosroc product.

Nosroc was named as a defendant because it is a successor-in-interest to G. & W.H. Corson, an entity that allegedly sold products manufactured by BEH and Keene that are alleged to contain asbestos. (D.I. 44 at ¶ 3; D.I. 100 at 1-2) During Mr. Roger's deposition, he did not identify any Nosroc product. Even assuming *arguendo* that Mr. Rogers was exposed to BEH and/or Keene products, plaintiff has not introduced evidence demonstrating a product nexus between his exposure to Nosroc's products and his alleged asbestos-related injuries, as required under Delaware law. Plaintiff also has not introduced any evidence from his co-workers placing him in the vicinity of any Nosroc products at any specific time. Furthermore, plaintiff has not introduced evidence that any naval service exposure to Nosroc products was a substantial factor

9

in causing his injuries, as required under maritime law. Therefore, the court recommends granting Nosroc's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendant Nosroc's motion for summary judgment. (C.A. No. 17-1570, D.I. 99)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 13, 2019

Sherry R. Fallon
United States Magistrate Judge