## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| | ) |
| RICHARD WAYNE ROGERS | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 17-1570-MN-SRF |
| v. | ) |
| | ) |
| AIR & LIQUID SYSTEMS | ) |
| CORPORATION et al., | ) |
| | ) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

### **I.    INTRODUCTION**

Presently before the court in this asbestos-related personal injury action are five motions

for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Warren Pumps

("Warren"), General Electric Company ("General Electric"), Air & Liquid Systems Corporation

("Air & Liquid"),[1] Charles A. Wagner Co., Inc. ("Wagner"), and Asbestos Corporation Ltd.

("Asbestos Corp."). (D.I. 106; D.I. 91; D.I. 103; D.I. 101; D.I. 93)  For the following reasons, I

recommend GRANTING defendants' motions for summary judgment.[2]

### **II.    BACKGROUND**

#### **a.    Procedural History**

On September 18, 2017, plaintiff Richard Wayne Rogers ("Mr. Rogers") originally filed

this personal injury action against multiple defendants in the Superior Court of Delaware,

---

[1] Air & Liquid is the successor-by-merger to Buffalo Pumps, Inc.  (D.I. 104 at 1)

[2] The briefing for the pending motion is as follows:  Warren (D.I. 107; D.I. 123; D.I. 128),
General Electric (D.I. 92; D.I. 122; D.I. 125), Air & Liquid (D.I. 104; D.I. 120; D.I. 127),
Wagner (D.I. 102; D.I. 119; D.I. 126), and Asbestos Corp. (D.I. 94; D.I. 121; D.I. 124).

asserting claims arising from Mr. Rogers' alleged harmful exposure to asbestos. (D.I. 1, Ex. A)
On November 2, 2017, the case was removed to this court by defendant Foster Wheeler LLC
("Foster Wheeler") pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[3] and
1446. Warren Pumps, General Electric, Air & Liquid, Wagner, and Asbestos Corp. filed
motions for summary judgment, individually. (D.I. 106; D.I. 91; D.I. 103; D.I. 101; D.I. 93)

### b. Facts

Plaintiff alleges that he developed mesothelioma as a result of exposure to asbestos-
containing materials during his career at the DuPont Seaford plant ("DuPont") and his service as
a machinist mate in the United States Navy. (D.I. 44 at ¶¶ 4-10) Plaintiff contends that he was
injured due to exposure to asbestos-containing products that defendants mixed, mined,
manufactured, distributed, and sold. (*Id.* at ¶ 11) Accordingly, plaintiff asserts claims for
negligence, punitive damages, strict liability, and conspiracy. (*Id.* at ¶¶ 15-47)

Mr. Rogers was deposed on April 11 and 24, 2018. (D.I. 48; D.I. 49) Plaintiff did not
produce any other fact or product identification witnesses for deposition.

Mr. Rogers started working in housekeeping at DuPont in July 1966, following his high
school graduation. (D.I. 102, Ex. A at 177:22-178:8) He worked at DuPont for three months.
(*Id.* at 178:9-24) While working in housekeeping, Mr. Rogers swept the warehouse floor in the
staple area. (*Id.* at 180:4-15, 181:6-9) He used a sweeping compound to keep the dust down
while sweeping, and testified that he never noticed any dust created from the sweeping
compound. (*Id.* at 182:14-23, 185:13-15, 198:4-10) He admitted that there was not much dust in

---

[3] The federal officer removal statute permits removal of a state court action to federal court
when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any
officer (or any person acting under that officer) of the United States or of any agency thereof,
sued in an official or individual capacity for any act under color of such office." 28 U.S.C. §
1442(a)(1).

2

the area, and stated that the sweeping compound was used to keep the area clean. (*Id.* at 184:11-22) The sweeping compound was stored in galvanized containers, but Mr. Rogers does not remember any labels on these containers. (*Id.* at 183:2-23) He stated that the compound had the consistency of "kitty litter [or] sawdust" and was a pink or purple color. (*Id.* at 185:2-12) He testified that the color of the sweeping compound did not change while he was working at DuPont, and that he has no reason to believe that the sweeping compound contained asbestos. (*Id.* at 186:18-25, 189:25-190:3)

In September 1966, Mr. Rogers started boot camp in the Great Lakes. (*Id.* at 187:1-9) He was in boot camp for three months and was then assigned to the *USS Moale*, a DD-693 World War II Fletcher-class destroyer, in Newport, Rhode Island. (D.I. 107, Ex. A at 77:12-23) He entered as a fireman and became a machinist mate on the *USS Moale*. (*Id.* at 78:1-3; D.I. 123, Ex. B at 23:12-15) As a fireman, he worked in the engine rooms, performing maintenance on pumps and evaporators, including pump packing and installation of new bearings. (D.I. 107, Ex. A at 78:10-12, 81:14-19, 82:9-12, 91:2-7) When the pumps began to leak, he repacked them by pulling out wet packing and cutting rings of new packing with a knife. (D.I. 123, Ex. A at 161:10-14, 165:2-25, 166:21-167:13) Mr. Rogers would also replace the pipe insulation by tearing off the pipe's covering, wetting insulation, and packing the insulation around the pipes. (D.I. 122, Ex. A at 104:16-22; D.I. 125, Ex. A at 92:1-10, 100:7-15) Mr. Rogers testified that while he did not perform any work on turbines themselves, he maintained pumps that assisted in the functioning of the turbines. (D.I. 107, Ex. A at 88:20-89:25)

In approximately 1967, Mr. Rogers was stationed at the *USS Cony*, a DD-508 Fletcher-class destroyer, in Philadelphia. (*Id.* at 97:9-15, 97:23-25; D.I. 44 at ¶ 10) He performed maintenance on the *USS Cony* for one month, before performing tasks relating to its

3

decommission. (D.I. 107, Ex. A at 102:1-14) Mr. Rogers testified that no decommissioning tasks, other than contact with the piping, exposed him to asbestos. (*Id.* at 102:15-18)

After three months on the *USS Cony*, Mr. Rogers was stationed at the *USS Steinaker*, a DD-863 Fletcher-class destroyer. (*Id.* at 101:5-7, 102:19-103:2; D.I. 44 at ¶ 10) He performed maintenance in the engine room similar to the tasks he performed on the *USS Moale* and *USS Cony*. (D.I. 107, Ex. A at 104:2-11) The *USS Steinaker* "ran aground" in Norway, which caused damage to the main control and the underside of the ship. (*Id.* at 113:2-10; D.I. 125, Ex. B at 38:1-6) The Norwegians towed the *USS Steinaker* to Bergen, where they repaired the ship over the next five months. (D.I. 125, Ex. B at 38:7-18) He was present during the repair of the *USS Steinaker*'s turbine, but did not participate in its repair. (D.I. 122, Ex. A at 107:3-24; D.I. 125, Ex. B at 38:19-39:8, 71:2-4) Mr. Rogers performed pump maintenance during the *USS Steinaker*'s overhaul. (D.I. 107, Ex. A at 113:11-114:23; D.I. 125, Ex. B at 38:19-39:8, 71:2-4) Mr. Rogers served on the *USS Steinaker* until his honorable discharge from the Navy in 1970. (D.I. 122, Ex. A at 106:19-22; D.I. 123, Ex. A at 187:15-19)

In December 1970, Mr. Rogers returned to DuPont and performed housekeeping duties substantially similar to the work he had performed prior to his naval service. (D.I. 102, Ex. A at 188:18-189:1) After approximately one month, he started working as a bale scale operator at DuPont. (*Id.* at 190:9-14) In this role, he labelled and sent out bales of nylon. (*Id.* at 190:22-191:13) While he performed this job, other individuals swept the floors with the same sweeping compound he used when he performed housekeeping duties. (*Id.* at 191:21-192:15) After one year as a bale scale operator, Mr. Rogers was promoted to a tow packing position in 1972. (*Id.* at 193:3-9) Mr. Rogers performed his duties in tow packing in the staple area where individuals swept floors with the same sweeping compound he had previously used. (*Id.* at 193:14-23,

4

194:14-21) After one year in tow packing, he started working as a spinning machine operator. (*Id.* at 194:2-13) Although he performed his spinning machine operator duties outside of the staple area, individuals still used the sweeping compound around him. (*Id.* at 196:10-22, 197:7-20) He worked as a spinning machine operator for a few months before leaving DuPont in 1973. (*Id.* at 195:3-8, 199:8-10) Mr. Rogers was diagnosed with mesothelioma in 2017. (D.I. 140 at 22:23-23:10)

## III. LEGAL STANDARD

### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

5

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 80) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[4] in causing the injury he suffered." *Lindstrom v. A-C Prod.*

---

[4] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W.*

6

*Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) *abrogated on other grounds by Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986 (2019)[5] (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at \*8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at \*3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at \*4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[6] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at \*1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise,

_____

*Chesterton Co.*, 2011 WL 11439126, at \*1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[5] In *Devries*, the Supreme Court rejected "the more defendant-friendly bare metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Devries*, 139 S. Ct. at 994. The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 996.

[6] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at \*4 (6th Cir. Apr. 25, 1991)).

a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

### c. Delaware Law

Under Delaware law, a plaintiff asserting a claim for asbestos-related injuries must introduce evidence showing a product nexus between his exposure to a defendant's product and his asbestos-related injuries. *Cain v. Green Tweed & Co.*, 832 A.2d 737, 741 (Del. 2003) (citing *In re Asbestos Litig.*, 509 A.2d 1116, 1117 (Del. Super. Ct. 1986), *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987)).

Delaware courts have not followed the "frequency, proximity, and regularity" test,[7] first set forth in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), which has been adopted as the test in numerous jurisdictions. *Happel v. Anchor Packing Co.*, 2010 WL 7699063, at *1 (E.D. Pa. Oct. 14, 2010). Delaware courts require a plaintiff show that he was in proximity to the product at the time it was being used. *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super Ct. 1986). Plaintiff must show "that the asbestos product was used in an area where the plaintiff frequented, walked by, or worked adjacent to, with the result that fibers emanating from the use of the product would have been present in the area where the plaintiff worked."

---

[7] The court, in *Lohrmann*, stated that to support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. *Lohrmann*, 782 F.2d at 1162-63.

*Cain*, 832 A.2d at 741. This standard "requires plaintiff [to] show 'some evidence' of both 'daily and continuous proximity' to defendant's product for more than a *de minimis* period of time." *In re: Asbestos Litig.*, 2017 WL 237617, at *2 (Del. Super. Ct. Jan. 17, 2017) ("*Hastings*").

This standard, known as the "product nexus standard," is meant to ensure that the plaintiff presents "a factual connection in space and time between a particular plaintiff and a particular defendant's product." *Id.* (quoting *Merganthaler*, 1988 WL 116405, at *1-2). "Delaware courts have held that a plaintiff can survive summary judgment if there is non-speculative testimony that asbestos-containing products were used at a worksite during the time plaintiff was employed there." *Happel*, 2010 WL 7699063, at *1; *In re Asbestos Litigation: Mizell v. RCH Newco II, LLC*, 2017 Del. Super. LEXIS 3335 (Del. Super. Ct. Sept. 19, 2017). "'To defeat summary judgment in a case where the plaintiff himself is not able to establish exposure, a co-worker must be able to place the plaintiff in the vicinity of a specific location on the defendant's property, at a specific time, where friable asbestos is present.'" *Reed v. Nosroc Corp.*, 2016 Del. Super. LEXIS 665, at *3 n.4 (Del. Super. Ct. July 6, 2016) (quoting *In re Asbestos Litig.*, 2007 WL 1651968, at *20 (Del. Super. Ct. May 31, 2007), *as corrected* (June 25, 2007) ("*Helm*")).

## IV.    DISCUSSION

### a.    Applicable Standard

As a preliminary matter, plaintiff repeatedly asserts that the standard articulated by the Supreme Court in *Devries* should apply to defendants' motions for summary judgment that are governed by maritime law. (D.I. 123 at 10-11; D.I. 122 at 10-12; D.I. 120 at 12-14) However, the bare metal defense is not in issue here because Warren, General Electric, and Air & Liquid

9

are challenging at the outset the plaintiff's ability to identify defendants' products and show substantial factor causation under *Lindstrom*, i.e., lack of sufficient product exposure and no nexus to causation of injuries. (D.I. 107 at 10-11; D.I. 92 at 4; D.I. 104 at 9-10)

### b. Warren Pumps

Warren argues that plaintiff cannot show that Warren's products were a substantial factor in causing Mr. Rogers' injury as required under maritime law because Mr. Rogers did not name Warren as a pump manufacturer, instead, he recalled certain types of pumps. (D.I. 107 at 10-11) For example, Mr. Rogers identified feed pumps, booster pumps, and condensate pumps associated with turbines on the *USS Moale* and lube oil pumps on the *USS Steinaker*. (D.I. 107, Ex. A at 90:8-91:1, 164:9-24) Mr. Rogers could not recall the types of pumps aboard the *USS Cony*. (*Id.* at 99:8-100:1, 164:2-5) Additionally, Warren argues that plaintiff does not allege he was exposed to asbestos from a pump, but rather from an unknown manufacturer's external pipe insulation. (*Id.* at 10)

Plaintiff counters that the National Archives entries regarding the *USS Moale* show that Warren supplied the main condenser circulating pump, which was shipped with asbestos-containing materials. (D.I. 123 at 4, 8-9; Ex. C) Plaintiff argues that Mr. Rogers spent a significant amount of time working on pumps in engine rooms. (*Id.* at 9) Furthermore, plaintiff claims that Warren sold pumps to the Navy that contained asbestos. (*Id.* at 4; Ex. D) Therefore, plaintiff concludes, there is a genuine issue of material fact regarding whether Warren's products were a substantial factor in causing Mr. Rogers' injury. (*Id.*)

Evidence that Warren supplied a main condenser circulating pump is insufficient to create a factual dispute regarding causation. *See Lindstrom*, 424 F.3d at 492 ("[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient."). A

10

plaintiff must provide evidence of "sufficient frequency, regularity, or proximity" to a product to create a genuine issue of material fact regarding substantial factor causation. *Thomasson v. Air & Liquid Systems Corp.*, 2015 WL 1639730, at *4 (D.N.J. Apr. 9, 2015). Mr. Rogers, however, was unable to identify the manufacturer of any pump upon which he performed maintenance while serving on the *USS Moale*, *USS Cony*, or *USS Steinaker*, or state which pump he worked with the most. (D.I. 107, Ex. A at 82:13-83:2, 99:8-100:1, 104:12-15, 164:2-16) He could not say whether he worked on one pump more than another, and only stated that he packed pumps "as needed." (*Id.* at 164:6-16) Furthermore, Mr. Rogers recalled working on condensate pumps, but plaintiff presents ship records revealing Warren main condenser circulating pumps, a different type of pump than what Mr. Rogers recalls. (D.I. 123, Ex. A at 88:20-89:1; Ex. C; D.I. 140 at 29:4-16)

Moreover, he believes his asbestos exposure is limited to the insulation wrapped around the pipes. (D.I. 107, Ex. A at 84:22-85:10, 96:14-18, 104:16-22) Although Mr. Rogers remembers this insulation product aboard each of the ships on which he served, he does not know the manufacturer of this insulation.[8] (*Id.* at 104:23-105:4, 105:18-22) Plaintiff's evidence fails to create a genuine issue of material fact as to whether Warren's products were a substantial factor in causing his injuries. *See Lindstrom*, 424 F.3d at 492; *Damon v. Aireon Manuf. Corp.*, 2015 WL 9461593, at *1 n.1 (E.D. Pa. Sept. 1, 2015). Therefore, the court recommends granting Warren's motion for summary judgment.

---

[8] The plaintiff has not identified any record evidence, circumstantial or otherwise, to create a causal connection between the pumps, the pipes, pipe insulation, and whether the (unknown) manufacturer required the use of an asbestos-containing component to re-pack the pumps and/or insulate the pipes. For the court to infer the causal connection would be speculative.

### c. General Electric Company

General Electric argues that plaintiff cannot show that General Electric products were a substantial factor in causing Mr. Rogers' injury as required under maritime law because Mr. Rogers did not identify a General Electric product. (D.I. 92 at 4) Additionally, General Electric notes that Mr. Rogers denies working on turbines during his naval service and does not attribute any asbestos exposure to turbines. (*Id.*; D.I. 125 at 1-5)

Plaintiff contends that National Archives records regarding the *USS Moale*, *USS Cony*, and *USS Steinaker* show that the main propulsion engines on these ships contained two sets of General Electric turbines. (D.I. 122 at 4; Ex. C; Ex. D; Ex. E) Plaintiff claims that he worked in close proximity to turbines and notes that he believes the turbines were manufactured either by Westinghouse or General Electric. (*Id.* at 4-5; D.I. 125, Ex. A at 108:16-109:1) Additionally, plaintiff claims that General Electric turbines necessitated the use of asbestos. (D.I. 122 at 4; Ex. F)

Ship records showing that the *USS Moale*, *USS Cony*, and *USS Steinaker* had main propulsion engines containing General Electric turbines is insufficient to create a factual dispute regarding causation. This evidence demonstrates only the presence of General Electric turbines aboard ships on which Mr. Rogers served, but does not establish Mr. Rogers' exposure to these turbines. *See Lindstrom*, 424 F.3d at 492. Mr. Rogers denied working on the turbines themselves, but described how he performed work on the pumps which assisted in the functioning of the turbines:

> Q: Let me be clear, then, to understand what you're telling me. Is your maintenance on the turbines aboard the Moale upon the pumps which assist in the functioning of the turbine?
>
> A: Exactly.

Q: Okay. Is it – are you at all involved in the maintenance of the turbine itself?

A: I've been in main feed pumps, working on them. But like I said, when we ran aground, they opened them up, the main. But we did not work on them.

Q: So let's break that down. Am I correct you did not do any work on the turbines themselves on the Moale?

. . .

A: No, we didn't actually work on the turbines.

(D.I. 125, Ex. A at 89:5-90:7) While Mr. Rogers was present when Norwegian technicians repaired the *USS Steinaker*'s turbines, he did not assist in this repair and did not know what work was being performed on the turbines. (D.I. 122, Ex. A at 107:3-108:8) Moreover, Mr. Rogers testified that he did not associate any asbestos exposure to any of the turbines themselves and did not know whether there was asbestos in the turbines. (D.I. 125, Ex. A at 109:7-25; Ex. B at 70:9:19) Thus, plaintiff has failed to create a genuine issue of material fact as to the causation inquiry. *See Lindstrom*, 424 F.3d at 492; *Damon*, 2015 WL 9461593, at *1 n.1. Accordingly, the court recommends granting General Electric's motion for summary judgment.

### d. Air & Liquid Systems Corporation

Air & Liquid argues that plaintiff cannot show that Air & Liquid products were a substantial factor in causing Mr. Rogers' injury as required under maritime law because Mr. Rogers failed to identify instances of exposure to a Buffalo asbestos-containing product. (D.I. 104 at 3, 6) Air & Liquid notes that Mr. Rogers could not recall the number of times he worked with Buffalo pumps, and could not definitively state that he worked with Buffalo pumps. (*Id.* at 9) Furthermore, Air & Liquid states that Mr. Rogers believes his asbestos exposure was

associated with his work on the insulation covering the pipes, and not on the pumps themselves.
(D.I. 127 at 3)

Plaintiff argues that Buffalo Pumps specified and supplied asbestos for its pumps used in
DD class ships like the *USS Moale*, *USS Cony*, and *USS Steinaker*. (D.I. 120 at 5; Ex. C; Ex. D;
Ex. F) More specifically, plaintiff argues that National Archives entries indicate that Buffalo
Pumps manufactured or supplied "the main feed, main feed booster, auxiliary feed booster, main
condensate, and auxiliary condensate pumps on the *USS Cony*." (*Id.* at 6; Ex. G) Furthermore,
plaintiff claims that gaskets and pumps included in pumps supplied by Buffalo Pumps between
1955 and 1985 contained asbestos. (*Id.* at 6; Ex. F) Because Mr. Rogers maintained many
different types of pumps aboard the *USS Cony*, plaintiff concludes that he was necessarily
exposed to Buffalo pumps. (*Id.* at 11-12; Ex. A at 163:23-164:5)

Evidence that Buffalo Pumps supplied several different kinds of pumps to DD class
ships, including the *USS Cony*, is insufficient to create a factual dispute regarding causation. *See
Lindstrom*, 424 F.3d at 492. This evidence shows that Buffalo pumps were aboard the *USS
Cony*, but plaintiff is still unable to provide details regarding the "frequency, regularity, or
proximity" of his exposure to Buffalo pumps during the one month period he served in the
engine room aboard the *USS Cony*. (D.I. 104, Ex. A at 101:5-102:18; D.I. 140 at 18:23-19:6)
*See Lindstrom*, 424 F.3d at 492; *Thomasson*, 2015 WL 1639730, at *4. Mr. Rogers was unable
to identify the manufacturer of any pump upon which he performed maintenance. (D.I. 104, Ex.
A at 82:13-83:2, 99:8-21, 104:12-15) He attributes his asbestos exposure to the insulation
covering the pipes. (*Id.* at 84:22-85:10, 96:14-18, 104:16-22) Mr. Rogers' testimony asserts that
he generally worked on ten different types of pumps aboard three ships during his naval service.
(D.I. 120, Ex. A at 162:16-25) Although Mr. Rogers testified that he repaired pumps every three

14

months, he has not provided specific testimony as to the "frequency, regularity, and proximity" of his work specifically with Buffalo pumps, and the court would only be speculating as to whether plaintiff's alleged exposure to Air & Liquid's products was a substantial factor in causing his injury. (D.I. 120 at 152:12-24) *See Thomasson*, 2015 WL 1639730, at \*3-4. Thus, plaintiff has failed to create a genuine issue of material fact as to the substantial factor causation inquiry. *See Lindstrom*, 424 F.3d at 492; *Damon*, 2015 WL 9461593, at \*1 n.1. Accordingly, the court recommends granting Air & Liquid's motion for summary judgment.

### e. Charles A. Wagner Co., Ltd.

Wagner argues that plaintiff cannot establish that Wagner products meet the product nexus standard as required by Delaware law because Mr. Rogers has failed to identify a product distributed by Wagner. (D.I. 102 at 1) Wagner asserts that plaintiff has failed to supply evidence that he was exposed to respirable asbestos fibers from the sweeping compound he used at DuPont. (*Id.* at 1, 10) Furthermore, Wagner contends that while plaintiff proffers other DuPont employees' testimony describing the sweeping compound, such testimony does not comport with the descriptions of the sweeping compound's color or consistency as described by Mr. Rogers. (*Id.* at 7; D.I. 126 at 3-4)

Plaintiff argues that, in *Nack v. Charles A. Wagner Inc.*, 803 A.2d 428 (Del. June 28, 2002), the Delaware Supreme Court made factual findings regarding Wagner being the sole supplier of asbestos fiber to DuPont during the relevant time period. (D.I. 119 at 6) Therefore, plaintiff concludes, Wagner is collaterally estopped from arguing that it did not sell asbestos sweeping compound from 1959 to 1972. (*Id.*) However, as the court in *Mizell* recognized, the Delaware Supreme Court in *Nack* did not make any factual findings, "but merely concluded that there were material issues of fact based on the record presented to the Superior Court." *Mizell*,

2017 Del. Super. LEXIS 3335, at *9. Furthermore, summary judgment decisions should be made on the record before the court in the particular case. *See id.*; *In re Asbestos Litigation*, 2011 WL 5429164, at *4-5 (Del. Super. Ct. Oct. 3, 2011) ("*Truitt I*"). Therefore, the court recommends rejecting plaintiff's argument on this point.

Here, plaintiff stated that he had no reason to believe that the sweeping compound contained asbestos. (D.I. 102, Ex. A at 186:23-25) Mr. Rogers could not remember the manufacturer of the sweeping compound or any label on the compound's containers. (*Id.* at 183:2-23) Under Delaware law, where a plaintiff is unable to establish exposure, "a co-worker must be able to place the plaintiff in the vicinity of a specific location on the defendant's property, at a specific time, where friable asbestos is present. To do so, there must be some meaningful intersection between the plaintiff and the co-worker on the property, both in place and time." *Helm*, 2007 WL 1651968, at *20; *see also Reed*, 2016 Del. Super. LEXIS 665. Here, there is no indication that the employees who testified were Mr. Rogers' co-workers or that they were in proximity to Mr. Rogers. (*See* D.I. 119, Ex. C; Ex. D; Ex. E; Ex. F; Ex. G) Moreover, Mr. Rogers testified that the color of the sweeping compound was pink or purple, which is inconsistent with other employees' testimony of gray, green, and white sweeping compound used at DuPont. (D.I. 102, Ex. A at 185:2-6, 186:14-22, 189:25-190:3; D.I. 119, Ex. C; Ex. D; Ex. E; Ex. F; Ex. G) As a result, it would speculative for the court to conclude that the proffered testimony refers to the sweeping compound to which Mr. Rogers was exposed. *See Happel*, 2010 WL 7699063, at *1 n.1; *In re Asbestos Litig.*, 2011 WL 5429168, at *2-3 (Del. Super. Ct. Oct. 6, 2011) ("*Truitt II*"). Therefore, plaintiff has not shown that Mr. Rogers was in close proximity to an asbestos product distributed by Wagner.

Plaintiff attempts to draw parallels between the present case, *Clark v. A.C. & S.*, 1985 Del. Super. LEXIS 1249 (Del. Super. Ct. Sept. 3, 1985), and *Cain v. Green Tweed Co., Inc.*, 832 A.2d 737 (Del. 2003). (D.I. 119 at 10-11) However, these cases are inapposite. The plaintiff in *Clark* provided evidence that defendant's product was present at plaintiff's work, while Mr. Rogers offers other cases filed against Wagner in an attempt to establish these facts for him. *See Clark*, 1985 Del. Super. LEXIS 1249, at \*3-5. (*See also* D.I. 119 at 11) The plaintiff in *Cain* specifically remembered using the defendant's products, the product's label, and the product's name. *Cain*, 832 A.2d at 741-42. Mr. Rogers has failed to provide evidence that the sweeping compound he used was an asbestos-containing Wagner product. Therefore, the court recommends rejecting plaintiff's argument on this point and granting Wagner's motion for summary judgment.

### f. Asbestos Corporation, Ltd.

Asbestos Corp. argues that plaintiff cannot establish that Asbestos Corp. products meet the product nexus standard as required by Delaware law because Mr. Rogers has failed to identify a product distributed by Asbestos Corp. (D.I. 94 at 2) Defendant argues that there is no non-speculative evidence to suggest that the sweeping compound contained asbestos. (*Id.* at 10) Asbestos Corp. contends that even assuming *arguendo* that an asbestos-containing Asbestos Corp. product was supplied to DuPont during the relevant time period, showing presence in a plaintiff's place of work is insufficient to prove causation. (*Id.* at 10-11)

Plaintiff argues that the Delaware Supreme Court, in *In re Asbestos Litig.*, 832 A.2d 705 (Del. 2003) ("*Fleetwood*"), has determined that Asbestos Corp. was the sole supplier of asbestos to Wagner, who in turn supplied this product to DuPont. (D.I. 121 at 6) A similar argument was pursued in attempting to defeat the defendant's motion for summary judgment in *Mizell*. *See*

*Mizell*, 2017 Del. Super. LEXIS 3335, at *7-8. The court in *Mizell* noted that the facts recited in

*Fleetwood* "were drawn from the record presented to the Superior Court for purposes of

summary judgment, not the result of any fact finding by the Supreme Court, or by the Superior

Court for that matter. Moreover, the issues decided in *Fleetwood* . . . are either not before this

Court or are secondary to the primary product nexus issue." *Id.* at *10. Therefore, the court

recommends rejecting plaintiff's argument on this point.

Here, plaintiff stated that he had no reason to believe that the sweeping compound

contained asbestos. (D.I. 121, Ex. A at 186:23-25) Mr. Rogers could not remember the

manufacturer of the sweeping compound or any labels on the compound's containers. (*Id.* at

183:2-23) Additionally, as the court determined in section (IV)(e) *supra*, there is no "meaningful

intersection between the plaintiff" and the other DuPont employees who testified. *See Helm*,

2007 WL 1651968, at *20; *Reed*, 2016 Del. Super. LEXIS 665. Furthermore, Mr. Rogers'

description of the sweeping compound's color and consistency is inconsistent with other

employees' description of the sweeping compound used at DuPont. (D.I. 94, Ex. C at 185:2-6,

186:14-22, 189:25-190:3; D.I. 121, Ex. C; Ex. D; Ex. F; Ex. G) Therefore, plaintiff has failed to

show that Mr. Rogers was in close proximity to an asbestos product distributed or manufactured

by Asbestos Corp. Accordingly, the court recommends granting Asbestos Corp.'s motion for

summary judgment.

### g. Strict Liability

The recommendation for granting defendants' motions for summary judgment for the reasons stated in sections (IV)(b)-(f) *supra* eliminates the need to consider strict liability. However, for the sake of completeness, this report and recommendation addresses the arguments raised by defendants Wagner and Asbestos Corp. (D.I. 102 at 11; D.I. 94 at 12) The court recommends granting summary judgment in favor of defendants with respect to plaintiff's strict liability claim.

Since the Delaware Supreme Court's decision in *Cline v. Prowler Indus. of Maryland, Inc.*, 418 A.2d 968 (Del. 1980), Delaware courts have refused to extend strict liability to cases involving the sale of a product even where it is alleged that the product is inherently dangerous. *See Bell v. Celotex Corp.*, 1988 WL 7623 (Del. Super. Ct. Jan. 19, 1988); *Hammond by Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558 (Del. Super. Ct. 1989). In *Bell*, the court refused to apply a strict liability action because it found that the sale of asbestos products was not an abnormally dangerous activity, and that Delaware cases reject the concept of strict liability in the realm of sales. *Bell*, 1988 WL 7623, at *2-3; *see also Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154, 156 (Del. 1980) ("The doctrine of strict tort liability has been preempted in this State in sales cases by the General Assembly's adoption of the Uniform Commercial Code."). Moreover, the motions for summary judgment on the strict liability claim are unopposed. (*See* D.I. 119 at 9 n.49; D.I. 121 at 8 n.47) Therefore, I recommend granting defendants' motions for summary judgment with respect to plaintiff's strict liability claims against Wagner and Asbestos Corp.

### h. Punitive Damages

The recommendation for granting defendants' motions for summary judgment for the reasons stated in sections (IV)(b)-(f) *supra* eliminates the need to consider punitive damages. However, for the sake of completeness, this report and recommendation addresses the arguments. The court recommends granting summary judgment in favor of all moving defendants with respect to plaintiff's punitive damages claim.

Punitive damages are limited to situations "where a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citation omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). Under Delaware law, punitive damages are "imposed only after a close examination of whether the defendant's conduct is 'outrageous,' because of 'evil motive' or 'reckless indifference to the rights of others.' Mere inadvertence, mistake or errors of judgment which constitute mere negligence will not suffice." *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987) (internal citation omitted).

Plaintiff concedes that he is not challenging the dismissal of his punitive damages claims against defendants. (D.I. 140 at 23:11-19) Therefore, the court recommends granting defendants' motions for summary judgment with respect to plaintiff's punitive damages claims.

### i. Conspiracy

The recommendation for granting defendants' motion for summary judgment for the reasons stated in sections (IV)(b)-(f) *supra* eliminates the need to consider plaintiff's conspiracy claim. However, for the sake of completeness, this report and recommendation addresses the arguments.

The court recommends granting summary judgment in favor of all moving defendants with respect to plaintiff's conspiracy claim. In Count VII of the amended complaint, plaintiff alleges defendants conspired to "suppress and misrepresent the hazards of exposure to asbestos." (D.I. 44 at ¶ 39) Plaintiff avers that because of this conspiracy, Mr. Rogers was "ignorant of the risks [he] faced when exposed to asbestos and asbestos containing products." (*Id.* at ¶ 41)

"The rule that civil conspiracy may not exist without an underlying tort is a common one. Indeed, we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405-06 (3d Cir. 2000) (internal citations and quotation marks omitted) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 & n.7 (3d Cir. 1999)).

Plaintiff failed to set forth any legal argument in response to defendants' motions for summary judgment as to the conspiracy claim.[9] (*See* D.I. 120; D.I. 122; D.I. 123) As such, plaintiff has not produced any evidence regarding defendants' agreement to suppress knowledge of the dangers of asbestos, or that they intentionally marketed their asbestos products without effective warnings. Additionally, the court has concluded above that the underlying claims of negligence fail due to lack of causation. Therefore, the court recommends granting defendants' motions for summary judgment with respect to plaintiff's conspiracy claim.

---

[9] Plaintiff does not oppose Wagner's and Asbestos Corp.'s motions for summary judgment as to his conspiracy claim. (D.I. 119 at 9 n.49; D.I. 121 at 8 n.47)

## V.    Conclusion

For the foregoing reasons, the court recommends granting defendants' motions for summary judgment.  (C.A. No. 17-1570, D.I. 106; D.I. 91; D.I. 103; D.I. 101; D.I. 93)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 15 , 2019

Sherry R. Fallon
United States Magistrate Judge