IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| <u>IN RE: ASBESTOS LITIGATION</u> )<br>)<br>RICHARD WAYNE ROGERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AIR & LIQUID SYSTEMS )<br>CORPORATION, et al., )<br>)<br>Defendant. ) | C.A. No. 17-1570 (MN)(SRF) |

# **MEMORANDUM OPINION**

David T. Crumplar, JACOBS & CRUMPLAR, P.A., Wilmington, DE – Attorneys for Plaintiff

Willard F. Preston, III, Bernadette M. Plaza, GOLDFEIN & JOSEPH, Wilmington, DE – Attorneys for Defendant Asbestos Corporation Limited

David C. Malatesta, KENT & MCBRIDE, P.C., Wilmington, DE – Attorneys for Defendant Charles A. Wagner Co., Inc.

August 7, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

On May 15, 2019, Magistrate Judge Fallon issued a Report and Recommendation ("the Report") (D.I. 143) granting five motions for summary judgment filed by defendants in this litigation. (D.I. 91; D.I. 93; D.I. 101; D.I. 103; D.I. 106). Presently before the Court are the objections of Plaintiff Richard Wayne Rogers ("Plaintiff" or "Rogers") (D.I. 146, D.I. 147) to two of Judge Fallon's recommendations in the Report – the recommended grants of summary judgment to Asbestos Corporation Limited ("ACL") and to Charles A. Wagner Company ("Wagner") (collectively, "Defendants"). The Court has reviewed the Report (D.I. 143), Plaintiff's objections (D.I. 146; D.I. 147), and the Defendants responses thereto (D.I. 154; D.I. 155). The Court has also considered *de novo* the objected-to portions of the Report and the relevant portions of Defendants' motions for summary judgment (D.I. 93, D.I. 94, D.I. 101, D.I. 102), and Plaintiff's responses to the motions (*see* D.I. 119; D.I. 121). For the reasons set forth below, Plaintiff's objections are OVERRULED, the Report is ADOPTED, and Defendants' motions for summary judgment are GRANTED.

## I. BACKGROUND

The Report correctly set out the procedural history of this case. (D.I. 143 at 1-2). Plaintiff filed this action on September 18, 2017 against multiple defendants in the Superior Court of Delaware, asserting claims based on alleged harmful exposure to asbestos. (D.I. 1, Ex. A). Plaintiff sued Defendants "for asbestos exposure while working at the Dupont Seaford Facility in the 1960s and 1970s," as well as other defendants for "exposure to asbestos while serving in the United States Navy from 1966 to 1970." (D.I. 146 at 1). The case was removed to this Court on November 2, 2017 by defendant Foster Wheeler LLC. Thereafter, the case was referred to Judge

1

Fallon. Discovery ended on September 10, 2018. (D.I. 29). Summary judgment motions were filed on October 10, 2018. (D.I. 93, D.I. 101).

The Report sets forth the facts underlying the motions. There is no dispute as to these facts, and the Court adopts them as follows in their entirety (D.I. 143 at 2-5):

> Plaintiff alleges that he developed mesothelioma as a result of exposure to asbestos containing materials during his career at the DuPont Seaford plant ("DuPont") and his service as a machinist mate in the United States Navy. (D.I. 44 at ¶¶ 4-10) Plaintiff contends that he was injured due to exposure to asbestos-containing products that defendants mixed, mined, manufactured, distributed, and sold. *(Id.* at ¶ 11) Accordingly, Plaintiff has asserted claims for negligence, punitive damages, strict liability, and conspiracy. *(Id.* at ¶¶ 15-47)
>
> Rogers was deposed on April 11 and 24, 2018. (D.I. 48; D.I. 49). Plaintiff did not produce any other fact or product identification witnesses for deposition.
>
> Mr. Rogers started working in housekeeping at DuPont in July 1966, following his high school graduation. (D.I. 102, Ex. A at 177:22-178:8) He worked at DuPont for three months. *(Id* at 178:9-24) While working in housekeeping, Mr. Rogers swept the warehouse floor in the staple area. *(Id.* at 180:4-15, 181:6-9) He used a sweeping compound to keep the dust down while sweeping, and testified that he never noticed any dust created from the sweeping compound. *(Id.* at 182:14-23, 185:13-15, 198:4-10) He admitted that there was not much dust in the area, and stated that the sweeping compound was used to keep the area clean. *(Id.* at 184:11-22) The sweeping compound was stored in galvanized containers, but Mr. Rogers does not remember any labels on these containers. *(Id.* at 183:2-23) He stated that the compound had the consistency of "kitty litter [or] sawdust" and was a pink or purple color. *(Id.* at 185:2-12) He testified that the color of the sweeping compound did not change while he was working at DuPont, and that he has no reason to believe that the sweeping compound contained asbestos. *(Id.* at 186:18-25, 189:25-190:3)
>
> In September 1966, Mr. Rogers started boot camp in the Great Lakes. *(Id.* at 187:1-9). He was in boot camp for three months and was then assigned to the *USS Moale,* a DD-693 World War II Fletcher-class destroyer, in Newport, Rhode Island. (D.I. 107, Ex. A at 77:12-23). He entered as a fireman and became a machinist mate on the *USS Moale. (Id.* at 78:1-3; D.I. 123, Ex. B at 23:12-15). As a fireman, he worked in the engine rooms, performing maintenance on pumps and evaporators, including pump packing and installation of new bearings. (D.I. 107, Ex. A at 78:10-12, 81:14-19, 82:9-12, 91:2-7) When the pumps began to leak, he repacked them by pulling out wet packing and cutting rings of new packing with a knife. (D.I. 123, Ex. A at 161:10-14, 165:2-25, 166:21-167:13) Mr. Rogers would also replace the pipe insulation by tearing off the pipe's covering, wetting insulation, and packing the insulation around the pipes. (D.I. 122, Ex. A at 104:16-22; D.I. 125, Ex. A at 92:1-10, 100:7-15) Mr. Rogers testified that while he did not

perform any work on turbines themselves, he maintained pumps that assisted in the functioning of the turbines. (D.1. 107, Ex. A at 88:20-89:25)

In approximately 1967, Mr. Rogers was stationed at the *USS Cony,* a DD-508 Fletcher-class destroyer, in Philadelphia. *(Id.* at 97:9-15, 97:23-25; D.I. 44 at 10) He performed maintenance on the *USS Cony* for one month, before performing tasks relating to its decommission. (D.I. 107, Ex. A at 102:1-14) Mr. Rogers testified that no decommissioning tasks, other than contact with the piping, exposed him to asbestos. *(Id* at 102: 15-18)

After three months on the *USS Cony,* Mr. Rogers was stationed at the *USS Steinaker,* a DD-863 Fletcher-class destroyer. *(Id* at 101:5-7, 102:19-103:2; D.I. 44 at 10) He performed maintenance in the engine room similar to the tasks he performed on the *USS Moale* and *USS Cony.* (D.I. 107, Ex. A at 104:2-11) The *USS Steinaker* "ran aground" in Norway, which caused damage to the main control and the underside of the ship. *(Id.* at 113:2-10; D.I. 125, Ex. B at 38:1-6) The Norwegians towed the *USS Steinaker* to Bergen, where they repaired the ship over the next five months. (D.I. 125, Ex. B at 38:7-18) He was present during the repair of the *USS Steinaker's* turbine, but did not participate in its repair. (D.I. 122, Ex. A at 107:3-24; D.I. 125, Ex. B at 38:19-39:8, 71:2-4) Mr. Rogers performed pump maintenance during the *USS Steinaker's* overhaul. (D.I. 107, Ex. A at 113:11-114:23; D.I. 125, Ex. B at 38:19-39:8, 71:2-4) Mr. Rogers served on the *USS Steinaker* until his honorable discharge from the Navy in 1970. (D.I. 122, Ex. A at 106:19-22; D.I. 123, Ex. A at 187:15-19)

In December 1970, Mr. Rogers returned to DuPont and performed housekeeping duties substantially similar to the work he had performed prior to his naval service. (D.I. 102, Ex. A at 188:18-189:1) After approximately one month, he started working as a bale scale operator at DuPont. *(Id.* at 190:9-14). In this role, he labelled and sent out bales of nylon. *(Id.* at 190:22- 191:13) While he performed this job, other individuals swept the floors with the same sweeping compound he used when he performed housekeeping duties. *(Id.* at 191:21-192:15) After one year as a bale scale operator, Mr. Rogers was promoted to a tow packing position in 1972. *(Id* at 193:3-9) Mr. Rogers performed his duties in tow packing in the staple area where individuals swept floors with the same sweeping compound he had previously used. *(Id.* at 193:14-23, 194:14-21) After one year in tow packing, he started working as a spinning machine operator. *(Id.* at 194:2-13) Although he performed his spinning machine operator duties outside of the staple area, individuals still used the sweeping compound around him. *(Id.* at 196:10-22, 197:7-20) He worked as a spinning machine operator for a few months before leaving DuPont in 1973. *(Id.* at 195:3-8, 199:8-10) Mr. Rogers was diagnosed with mesothelioma in 2017. (D.1. 140 at 22:23-23: 10).

**II.     LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). The Court may not grant summary judgment if a "reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

To defeat a motion for summary judgment, however, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). "[The] mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 (3d Cir. 1995). "If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

Under Delaware law, a plaintiff must present evidence that a defendant's asbestos-containing product was used at plaintiff's job site and that the plaintiff was in proximity to that product at the time it was being used. *In Re Asbestos Litig.*, 509 A.2d 1116 (Del. Super. 1986). It is well-established that a plaintiff does not meet his burden of proof by simply placing the product at the general work site. *Conway v. A.C.& S*, C.A. No. 82C-AP-77 (Del. Super. Feb. 3, 1987) (Order). Indeed, "Delaware courts do not allow a plaintiff to proceed against a defendant based on speculative exposure to that defendant's product." *In re Asbestos Litig.* (*Foucha*), No. N10C-05042ASB, 2011 WL 2347581, at *1 (Del. Super. Ct. June 3, 2011). Moreover, to defeat summary judgment where "the plaintiff himself is not able to establish exposure, a co-worker must be able to place the plaintiff in the vicinity of a specific location . . ., at a specific time, where friable asbestos is present. *Reed v. Nosroc Corp.*, 2016 Del. Super LEXIS 665, at *3 n. 4 (Del. Super Ct. July 6, 2016) (quoting *In re Asbestos Litig. (Helm)*, 2007 WL 1651968, at *20 (Del. Super. Ct. May 31, 2007)).

Here, there is no evidence that Plaintiff worked with or around sweeping compound distributed by Defendant Wagner that contained asbestos mined or supplied by ACL. Plaintiff could not identify the product he used as a sweeping compound at DuPont Seaford. He testified that he knew that the sweeping compound was stored in three or four galvanized containers located

5

in his area of the plant (D.I. 102, Ex. A, Page 183), but did not recall any name or writing on the galvanized containers (*Id.*). Plaintiff testified that he did not "have any reason to believe" that sweeping compound he used contained asbestos. (*Id.* at 186). Moreover, the color and consistency of the sweeping compound described by Plaintiff (pink or purple) did not match the color or consistency of the product sold to the DuPont Seaford plant by Defendants or the description of the product in the testimony of other employees at the plant.

To establish the required product nexus and proximity, Plaintiff relies on facts discussed in unrelated litigation, *In re Asbestos Litig. (Fleetwood),* 832 A.2d 705 (Del. 2003) and the deposition of Edward Rabon, Wagner's former president, taken in that case (D.I. 121 at Ex. J) as well as facts referenced in *Nack v. Charles A. Wagner, Inc.*, 803 A.2d 428 (Del. 2002). Plaintiff's arguments and objections regarding ACL and Wagner are essentially the same, and the Court will address them together.[1]

First, with respect to ACL, Plaintiff relies on *Fleetwood*, 832 A.2d 705, 707 (Del. 2003), in which the Delaware Supreme Court stated that "from the early 1950s until the 1970s Wagner was the area distributor for [ACL], a Canadian based asbestos producer" and that in "1970, twelve years after Wagner began selling ACL's asbestos, ACL sent a letter to Wagner informing its distributors that it intended to place a caution label on all future asbestos shipments." (D.I. 146 at 2-3). Plaintiff also notes that the earlier deposition testimony of Edward Rabon, Wagner's former president, demonstrates "that ACL was the sole supplier of asbestos to Charles A. Wagner Company." (*Id.* at 3).

---

[1] Plaintiff relies on both *Fleetwood* and *Nack* in its objections regarding ACL and only *Nack* in its objections regarding Wagner.

Delaware courts, however, have held that a plaintiff cannot rely on facts that were not the result of fact finding by the Court but rather were drawn from the record for purposes of summary judgment. In *Mizell v. RCH Newco II, LLC*, 2017 Del. Super. LEXIS 3335, *10 (Del. Super Sept. 19, 2017), the court found that facts recited in an earlier case – the same *Fleetwood* case relied upon here – "were drawn from the record presented to the Superior Court for purposes of summary judgment, not the result of any fact finding by the Supreme Court, or by the Superior Court for that matter." There, as here, the actual records from *Fleetwood* are not before this Court. As in *Mizzell*, here, Rogers cannot "import the records" from the *Fleetwood* case to supplement its failure to create the requisite factual record of nexus and proximity.

With respect to ACL and Wagner, Plaintiff relies on the purported factual findings in *Nack v. Charles A. Wagner, Inc.*, 803 A.2d 428 (Del. 2002) that there was no evidence of other asbestos sweeping compounds other than that supplied by Wagner. As in *Fleetwood*, in *Nack,* the Delaware Supreme Court did not make factual findings. Even if it had, however, the Court must rule on the facts of the case before it.[2] And here, there is no evidence what product Rogers used or that the product Rogers used actually contained asbestos.

That is particularly true given evidence that other products were used as sweeping products at the DuPont Seaford plant. The testimony of Marguerite Warren and the 1972 memo on which Plaintiff relies confirm the existence of other products. As stated in ACL's Reply Brief (D.I. 124 at 6), Warren's testimony confirms that other products, such as Kleensweep, were used as

---

[2] Plaintiff's request that the Court take judicial notice of the facts discussed in the earlier cases is denied. Rule 201(b) of the Federal Rules of Evidence permits a court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Here, Plaintiff has not explained how any of the "facts" asserted fall within the purview of Rule 201(b).

7

sweeping compounds at the plant.[3] (D.I. 124, Ex. G at 38-39). Similarly, the 1972 memo refers multiple products being used as sweeping compound at the plant including "Kleensweep" and "Oscar." (D.I. 119, Ex. K). Although the memo refers to an "asbestos type" sweeping compound, it does not identify the supplier and does not suggest that Plaintiff used the "asbestos type" product. It would be speculative for the Court to conclude that the proffered evidence refers to the sweeping compound Plaintiff used.

Moreover, assuming arguendo that Plaintiff had established that an asbestos containing product was supplied by ACL or Wagner to DuPont, showing the presence of that product in Plaintiff's workplace is not sufficient to establish nexus and proximity. *Conway*, No. 82C-AP-77 (Del. Super. Feb. 3, 1987). Other evidence, such as testimony of a co-worker placing the plaintiff in the vicinity of a specific location . . ., at a specific time, where friable asbestos is present is required. *See Reed*, 2016 Del. Super LEXIS 665, at *3 n.4. Here, there is no additional evidence. To the contrary, Plaintiff has not disputed the Report's conclusion that there is "no meaningful intersection between the [P]laintiff and the other DuPont employees who testified." (D.I. 143 at 18 (quoting *Helm*, No. 01C-06-151, 2007 WL 1651968, at *1).

Thus, the Court concludes Plaintiff's proffered evidence is not material to product nexus or would require impermissible speculation in order to conclude that Plaintiff was in close proximity to an asbestos containing product manufactured or distributed by Defendants. It does not raise a genuine issue of material fact and summary judgment is appropriate.

---

[3] Warren also recalled the name "asbestosorb." (D.I. 124, Ex. G at 38).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's objections are OVERRULED, the Report is ADOPTED, and Defendants' motions for summary judgment are GRANTED. An appropriate order will issue.